O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARY ANN PARKER,                    )   NO. EDCV 11-01763-MAN
                                    )
              Plaintiff,            )
                                    )   MEMORANDUM OPINION
      v.                            )
                                    )   AND ORDER
CAROLYN W. COLVIN,[1]               )
Commissioner of Social Security,    )
                                    )
              Defendant.            )
_____)

      Plaintiff filed a Complaint on November 14, 2011, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability and disability
insurance benefits ("DIB").  On December 19, 2011, the parties
consented, pursuant to 28 U.S.C. § 636(c), to proceed before the
undersigned United States Magistrate Judge.  The parties filed a Joint
Stipulation on July 11, 2012, in which:  plaintiff seeks an order
reversing the Commissioner's decision and awarding benefits or,

---

      [1]   Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

alternatively, remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 6, 2008, plaintiff filed an application for a period of disability and DIB, alleging an inability to work since March 11, 2006, due to "Rt arm can't push pull lift.  Very weak and bad spasms . . . ." (Administrative Record ("A.R.") 97-98, 99-100, 107.)  Plaintiff has past relevant work experience as a health assistant.  (A.R. 108.)

The Commissioner denied plaintiff's application initially and upon reconsideration.  (A.R. 51-60.)  On September 23, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge F. Keith Varni (the "ALJ").  (A.R. 26-48.)  On November 13, 2009, the ALJ denied plaintiff's claim (A.R. 13-25), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-6, 11).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since March 11, 2006, her application date.  (A.R. 18.)  The ALJ determined that plaintiff has the severe impairment of "post-surgical right shoulder impingement syndrome with subacromial bursitis and rotator cuff tendonopathy," but through the date last insured, she

did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b). (A.R. 18.) Specifically, the ALJ found that plaintiff can: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an 8-hour workday; sit for six hours in an 8-hour workday; and occasionally reach above the shoulder with her right upper extremity. (A.R. 18-19.)

The ALJ found that plaintiff's past relevant work, as a school health aide, does not require the performance of work-related activities precluded by plaintiff's RFC. (A.R. 21.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since March 11, 2006, the alleged onset date, through December 31, 2008, the date last insured. (A.R. 22.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not

3

necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

4

**DISCUSSION**

Plaintiff alleges the following issues:  (1) whether the ALJ properly considered fibromyalgia as a severe impairment; (2) whether the ALJ properly considered the opinion of treating physician Paul Liu, M.D.; (3) whether the ALJ properly considered plaintiff's testimony; and (4) whether the ALJ properly considered if plaintiff could perform her past relevant work.  (Joint Stipulation ("Joint Stip.") at 3.)

**I.   The ALJ Failed To Properly Consider Plaintiff's Fibromyalgia As A Severe Impairment.**

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[2]  20 C.F.R. § 404.1520(c).  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that the step two inquiry is "a *de minimus* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Accordingly, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight

_____

[2]   Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  Examples of such activities include:    (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) the "use of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and ususal work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.*

abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir. 2005)(citation omitted); see Soc. Sec. Ruling 85–28, 1985 WL 56856, at *3, 1985 SSR LEXIS 19, at *9 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*")(emphasis added).

On July 2, 2008, Sanjay C. Bhakta, M.D., plaintiff's treating physician, noted that plaintiff had "diffuse myalgias/trigger point pains suggestive of fibromyalgia . . . ." (A.R. 275.) On February 18, 2009, Dr. Bhakta recounted plaintiff's symptoms of "persistent pains in the right shoulder, hand and forearm, neck, and knee/ankle[] pains x 17 years" and "similar milder symptoms on the left side." (A.R. 250.) Upon physical examination, he noted that plaintiff had "[d]iffuse tender points over the posterior occiput, neck anterior chest, shoulders, elbows, medial knees and medial ankles . . . ." (A.R. 251.)

At the referral of Dr. Bhakta, on February 20, 2009, Anthony Te-Hui Lin, M.D., a rheumatologist,[3] examined plaintiff for "diffuse pain, rule out fibromyalgia." (A.R. 318-22.) Dr. Lin noted plaintiff's symptoms of "diffuse arthralgia involving [s]houlders, arms, neck, back and legs." (A.R. 318.) Upon examination, Dr. Lin observed that plaintiff

---

[3]    "Rheumatology is the relevant specialty for fibromyalgia." Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004); see Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872-73 (9th Cir. 2004) (*overruled on other grounds in* Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (2006). "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Id.*

exhibited "14/18 tender points," and he diagnosed her with fibromyalgia. (A.R. 319.)   He proscribed "flexeril (cyclobenzaprine)" for the fibromyalgia.   (A.R. 320.)

On August 10, 2009, Dr. Lin noted that plaintiff had "tenderness and stiffness at her tender points" and observed 12 tender points. (A.R. 292.)   He also noted that there was "no evidence of inflammatory arthritis or muscle weakness" and "[w]orkup for rheumatoid arthritis was negative."   (A.R. 293.)   Dr. Lin assessed plaintiff with fibromyalgia and rotator cuff syndrome.   (A.R. 292.)

On December 23, 2009, Dr. Lin again documented that plaintiff had tenderness at 12 tender points.   (A.R. 358.)   He assessed her fibromyalgia as improved.   (*Id.*)

On April 12, 2010, Dr. Bhakta noted that plaintiff's fibromyalgia was "inadequately controlled." (A.R. 332-34.) He recommended that she start a "trial of Vitamin B12 shots every 2 weeks for fibromyalgia." (*Id.*)

Plaintiff testified that she has pain in both her upper extremities, hips, legs, and feet, and she has muscle spasms. (A.R. 38-39.)  She has pain "almost constantly." (A.R. 39-40.)  Plaintiff stated that she was diagnosed with fibromyalgia approximately a year prior to the hearing, but "all through the years I was told I had tendinitis." (A.R. 38.)   As a result of her pain, she can only lift up to five pounds, has difficulty sitting and standing for prolonged periods of time, and needs to be reclined with her feet up a total of four hours in

1  a day.  (A.R. 43-44.)

2

3       The ALJ proffered several reasons for finding that plaintiff's
4  fibromyalgia was "not a severe impairment." (A.R. 20.)  First, the ALJ
5  stated that, although plaintiff has been diagnosed with fibromyalgia,
6  the "only basis for the diagnosis . . . appears to be diffuse myalgias
7  and tenderness at tender points," and therefore, "without further
8  objective evidence, the diagnosis is questionable." (*Id.*)  This reason
9  reflects a lack of understanding of fibromyalgia and its diagnosis.

10

11      Fibromyalgia is not well-understood, its symptoms are subjective,
12  and it is difficult to diagnose.  *See* <u>Jordan</u>, 370 F.3d at 872 (noting
13  that "fibromyalgia's cause or causes are unknown, there is no cure, and
14  of greatest importance to disability law, its symptoms are entirely
15  subjective").   There generally is very little, if any, objective
16  clinical or diagnostic evidence upon which a fibromyalgia diagnosis may
17  be based.  *See* <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996)
18  ("[f]ibromyalgia . . . [is an] elusive and mysterious disease").
19  "[T]here are no laboratory tests for the presence and severity of
20  fibromyalgia." *Id.*  Thus, the fact that plaintiff has only minimal,
21  objectively determinable signs of fibromyalgia does not mean that she
22  does not suffer from it.

23

24      Moreover, Dr. Lin's findings of "diffuse arthralgia involving
25  [s]houlders, arms, neck, back, and legs" and "14/18 tender points"
26  reflects *the* principal diagnostic test for fibromyalgia. (A.R. 318-19.)
27  "'[T]he only symptom that discriminates between [fibromyalgia] and other
28  diseases of a rheumatic character' [are] multiple tender spots, more

precisely 18 fixed locations on the body (and the rule of thumb is that the patient has to have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)(*quoting* Sarchet, 78 F.3d at 306).

Second, the ALJ found that plaintiff's fibromyalgia was not a severe impairment, because the diagnosis was based on plaintiff's subjective complaints, which the ALJ found not to be fully credible. (A.R. 20.)  However, as discussed below, the ALJ erred in finding that plaintiff was not credible.

Third, the ALJ found fibromyalgia to be not a severe impairment, because "no medical source describe[d] any limitations caused by the fibromyalgia."  (A.R. 20.)  However, if the ALJ had any question(s) regarding functional limitations caused by plaintiff's fibromyalgia, the ALJ should have recontacted plaintiff's treating physicians in accordance with his duty to conduct an appropriate inquiry.  *See* 20 C.F.R. § 404.1512(e) (noting that the administration "will seek additional evidence or clarification from your medical source when the report . . . from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information").[4]   Failure to develop the record fully constitutes error.

---

[4]    At a minimum, and as properly noted by plaintiff, she had non-functional limitations, *e.g.*, pain, for which she was prescribed medication.

9

1    In sum, plaintiff's testimony and the opinions of plaintiff's
2  treating physicians demonstrates that plaintiff's fibromyalgia would
3  have more than a minimal effect on her ability to function in the
4  workplace.   The ALJ's findings to the contrary are not based on
5  substantial evidence and constitute error.

6

7    Moreover, contrary to defendant's contention, the ALJ's error
8  cannot be deemed harmless.   In general, an ALJ's failure to acknowledge
9  a claimant's impairment at step two may be deemed harmless only when the
10  ALJ's error did not prejudice a claimant at later steps in the
11  sequential evaluation process.   In Burch, for example, the Ninth Circuit
12  assumed, without deciding, that the ALJ's failure to discuss plaintiff's
13  obesity in his step two analysis constituted legal error.   400 F.3d at
14  682.   The Ninth Circuit concluded, however, that the assumed error was
15  harmless, because it would not have impacted the ALJ's analysis at
16  either step four or five of the evaluation process.   Specifically, the
17  Ninth Circuit found that, for purposes of step four, plaintiff failed to
18  point to any evidence of functional limitations due to her obesity that
19  would have impacted the ALJ's analysis.   *Id.* at 683.   At step five, the
20  Ninth Circuit found that no prejudice occurred, because the ALJ
21  "adequately considered [plaintiff's] obesity in his RFC determination,"
22  *i.e.*, there were no "functional limitations as a result of [plaintiff's]
23  obesity that the ALJ failed to consider."   *Id.* at 684; *see also* Lewis v.
24  Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(finding that any error the ALJ
25  committed in failing to list plaintiff's bursitis at step 2 was
26  harmless, because the ALJ "extensively discussed" plaintiff's bursitis
27  and "considered any limitations posed by the bursitis at [s]tep 4").

28

10

1    In this case, unlike in Burch and Lewis, the Court cannot conclude

2 that the ALJ's failure to consider plaintiff's fibromyalgia was harmless

3 error.   As discussed below, the ALJ improperly rejected plaintiff's

4 credibility.   Certainly the alleged limitations to which plaintiff

5 testified, if credited, could have impacted the ALJ's analysis at either

6 step four or five of the sequential evaluation process.   Accordingly,

7 because the Court cannot conclude that plaintiff was not prejudiced at

8 a later step, the Court cannot find the ALJ's step two error to be

9 harmless.  *See* Stout, 454 F.3d at 1055 (finding an error to be harmless

10 when it "was nonprejudicial to the claimant or irrelevant to the ALJ's

11 ultimate disability conclusion").[5]

12

13    [5]    Defendant argues that plaintiff failed to establish
fibromyalgia as a severe impairment prior to her date last insured, and
14 thus, the ALJ need not have considered fibromyalgia as a severe
impairment.   But this is a post hoc rationalization, which the Court
15 cannot consider.  *See, e.g.*, Orn, 395 F.2d at 630 (noting that the court
may "review only the reasons provided by the ALJ in the disability
16 determination and may not affirm the ALJ on a ground upon which he did
not rely"); *see also* Connett, 340 F.3d at 874.
17
        Plaintiff testified that she was given the diagnosis of
18 fibromyalgia just one year prior to the date of the hearing, but
previously she "was always told" she had tendinitis.   "All through the
19 years I was told I had tendinitis.   And I always wondered, you know, why
doesn't it go away?  Because I thought tendinitis . . . , you know, went
20 away."  (A.R. 38.)

21        Dr. Bhakta reported on February 18, 2009, that plaintiff:

22    notes persistent pains in the right shoulder, hand and
      forearm, neck and knee/ankles pains x 17 years [--] s/p
23    surgery x 2 years ago for calcific tendonitis in the shoulder
      [--] seen by Orthopedic Surgery Dept without benefit.   Also
24    notes similar milder symptoms on the left side.   Also notes
      bilateral medial ankle and knee pains. [--]overall symptoms
25    are not improving and pt feels like she may have
      Rheumatological problem like fibromyalgia vs. other [--]
26    requests to be seen by a Rheumatologist for further
      evaluation.
27

28 (A.R. 250.)   Two days later, plaintiff was diagnosed by Dr. Lin as
suffering from fibromyalgia.   It thus strains reason to suggest that

11

1   **II.   The ALJ Failed To Give Clear And Convincing Reasons For**
2   **Finding Plaintiff's Testimony To Be Not Credible.**

3

4       Once a disability claimant produces objective medical evidence of
5   an underlying impairment that is reasonably likely to be the source of
6   claimant's subjective symptom(s), all subjective testimony as to the
7   severity of the symptoms must be considered.  Moisa v. Barnhart, 367
8   F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345
9   (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain
10  and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of
11  malingering based on affirmative evidence thereof, he or she may only
12  find an applicant not credible by making specific findings as to
13  credibility and stating clear and convincing reasons for
14  each."  Robbins, 466 F.3d at 883.  The factors to be considered in
15  weighing a claimant's credibility include:   (1) the claimant's
16  reputation for truthfulness; (2) inconsistencies either in the
17  claimant's testimony or between the claimant's testimony and her
18  conduct; (3) the claimant's daily activities; (4) the claimant's work
19  record; and (5) testimony from physicians and third parties concerning
20  the nature, severity, and effect of the symptoms of which the claimant
21  complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
22  2002); *see also* 20 C.F.R. § 404.1529(c).

23  _____

24  plaintiff's fibromyalgia suddenly appeared.  (A.R. 318-22.) The fact
    that Dr. Lin diagnosed fibromyalgia so quickly based upon plaintiff's
25  medical history and symptoms suggests that plaintiff likely suffered
    from undiagnosed fibromyalgia prior to its diagnosis.  In view of the
26  ambiguity surrounding the timing of the onset date of that disease, the
    ALJ should further develop the record by contacting Dr. Lin and Dr.
27  Bhakta regarding this issue.  It is well-settled that the diagnosis of
    a condition may occur after the onset of that condition.  Lester v.
28  Chater, 81 F.3d 821, 832 n.9 (9th Cir. 1995).

1   Here, the ALJ found that "[a]fter careful consideration of the
2   evidence, . . . [plaintiff]'s medically determinable impairment could
3   reasonably be expected to cause the alleged symptoms . . . ."   (A.R.
4   19.)   Further, the ALJ cited no evidence of malingering by plaintiff.
5   Accordingly, the ALJ's reason for rejecting plaintiff's credibility must
6   be "clear and convincing."

7

8   The ALJ stated that plaintiff's "statements concerning the
9   intensity, persistence and limiting effects of [her] symptoms are not
10  credible to the extent they are inconsistent with [the ALJ's RFC]
11  assessment."   (A.R. 19.)   Specifically, the ALJ found plaintiff to be
12  "exaggerating her limitations," because:   (1) "despite [plaintiff's]
13  testimony that there is no job she can do, she admits she can: cook,
14  drive, do housework, do laundry, and shop"; (2) "nearly every
15  examination of [plaintiff] was within normal limits other than for
16  subjective complaints of tenderness"; (3) plaintiff's "lack of ongoing
17  non-conservative treatment"; and (4) "[t]he medical evidence of record
18  simply fails to support [plaintiff]'s allegation of extreme limitations
19  in sitting, standing and lifting."   (*Id.*)

20

21  The ALJ's first ground for discrediting plaintiff does not
22  constitute a clear and convincing basis upon which to reject her
23  subjective pain testimony.   The ALJ fails to demonstrate how plaintiff's
24  performance of basic self-care activities and household chores
25  translates into the ability to engage in full-time work.   *See* <u>Gonzalez</u>
26  <u>v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir.1990)(daily activities may not
27  be relied upon to support an adverse credibility decision where those
28  activities do not affect the claimant's ability to perform appropriate

work activities on an ongoing and daily basis).

The fact that plaintiff can intermittently "cook, drive, do housework, do laundry, and shop" does not contradict plaintiff's testimony that she is unable to maintain a full-time job because of the "almost constant[]" pain in both her upper extremities, hip, legs, feet, and hands. (*See* A.R. 36-38, 40.) Moreover, plaintiff testified that she can go to the "grocery store but when [she] get[s] home from the grocery store [her] feet are hurting, [her] ankles are hurting and [are] swollen and red." (A.R. 43.) She testified that she does housework only when "[she] feel[s] up to it, and [she] take[s] a break when [she] need[s] to." (A.R. 47.) Plaintiff further explained that although she drives, some weeks she does not do anything, "[she] do[es]n't go anywhere." (A.R. 45.) There is no basis for finding that the simple daily activities cited by the ALJ, which plaintiff apparently struggles to perform, are easily transferable to the more grueling environment of the workplace, much less that they are inconsistent with and/or negate plaintiff's assertions regarding the subjective symptoms flowing from her objectively determined physical impairments. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998)(only if the level of activity was inconsistent with claimant's claimed limitations would the activity have any bearing on claimant's credibility); <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987)(disability claimant need not "vegetate in a dark room" to be deemed eligible for benefits).

The ALJ's second and fourth ground for finding plaintiff to be not credible -- both of which cite the failure of the objective evidence to support plaintiff's subjective complaints -- do not constitute clear and

14

convincing reasons for discrediting plaintiff. The failure of the objective medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins, 261 F.3d at 856; Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings").[6]

The ALJ's third ground for discrediting plaintiff, *i.e.*, the lack of ongoing non-conservative treatment, is also not a clear and convincing reason. Plaintiff stated that for her pain, "nothing seems to work." (A.R. 41.) She testified that she was:

> prescribed two different muscle relaxers and they work so slightly that it's not worth the feeling that [she] get[s] from them. And [she] take[s] Ibuprofen occasionally. [She has] tried two different pain pills and they don't work, and they -- [she] do[es]n't like what they do to [her] -- the way [she] feel[s]. It's like nothing works well enough. Nothing takes the pain away well enough to be worth the side effects.[7]

---

[6] Moreover, as noted above, the lack of objective medical evidence is consistent with the nature and symptoms of fibromyalgia -- an impairment which the ALJ rejected in evaluating plaintiff's allegations of disabling pain, symptoms, and limitations. Benecke, 379 F.3d at 594 (stating that fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms").

[7] There is no indication that the side effects of plaintiff's medications were considered in the disability evaluation. *See* Erickson v. Shalala, 9 F.3d 813, 817–18 (9th Cir. 1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "'significant impact on an individual's ability to work'")

1   (A.R. 41-42.)

2

3        The record also indicates that plaintiff is given Vitamin B12 shots

4   every 2 weeks for her fibromyalgia.  (A.R. 334, 330, 328.)  Plaintiff

5   testified that it was recommended that she get massages for her pain

6   "but it's expensive to do that, so [she] ha[s]n't -- [she] ha[s]n't done

7   that."[8]    (A.R. 45.)   Given the nature and extent of plaintiff's

8   treatment, it does not appear that it is so conservative as to call into

9   question plaintiff's subjective testimony.  Further, there is no

10  substantial evidence in the record to support the ALJ's inference that

11  plaintiff's debilitating pain and symptoms would be alleviated if she

12  were to secure more aggressive treatment.  Indeed, there is no surgical

13  or other cure for fibromyalgia, which can be a debilitating

14  disease.  See Jordan, 370 F.3d at 872 (recognizing that there is no cure

15  for fibromyalgia).   Thus, this reason for rejecting plaintiff's

16  subjective complaints also is not convincing.

17

18       Accordingly, the ALJ's rejection of plaintiff's credibility,

19  without setting forth clear and convincing reasons, constitutes

20  reversible error.  On remand, the ALJ must provide reasons for doing so,

21  if they exist, in accordance with the requisite legal standards, for

22  discrediting plaintiff's pain testimony.

23

24  (citation omitted); see also Soc. Sec. Ruling 96-7p, 1996 WL 374186, at
    *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that type, dosage,
25  effectiveness, and side effects of any medication the individual takes
    or has taken to alleviate pain or other symptoms should be considered in
26  the disability evaluation); 20 C.F.R. § 404.1529(c)(3)(iv).

27       [8]   While an unexplained failure to seek treatment may cast doubt
    on a claimant's credibility, such an inference is unreasonable where
28  plaintiff is indigent.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.
    1989).

16

1     **III.  The ALJ Failed To Set Forth The Requisite Specific And**

2           **Legitimate  Reasons  For  Rejecting  The  Opinion  Of**

3           **Plaintiff's Treating Physician, Paul Liu, M.D.**

4

5           When the ALJ rejects the opinion of a treating physician which has

6     been  contradicted,  the  ALJ  may  reject  that  opinion  only  by  providing

7     specific  and  legitimate  reasons  for  doing  so,  supported  by  substantial

8     evidence  in  the  record.   Lester, 81 F.3d at 830.   In the hierarchy of

9     physician  opinions  considered  in  assessing  a  social  security  claim,

10    "[g]enerally,  a  treating  physician's  opinion  carries  more  weight  than  an

11    examining  physician's,  and  an  examining  physician's  opinion  carries  more

12    weight  than  a  reviewing  physician's."   Holohan v. Massanari, 246 F.3d

13    1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527.   Broad  and  vague

14    reasons  will  not  suffice  for  rejecting  the  treating  physician's  opinion.

15    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

16

17          The  ALJ  accorded  "very  little  weight"  to  Dr.  Liu's  opinion  that

18    plaintiff  has  been  "unable  to  work  since  early  2007,  due  to  chronic

19    activity  related  right  upper  extremity  pain,  pain  around  the  shoulder

20    blade,  and  related  neck  and  right  shoulder  discomfort"  (A.R.  212),

21    because:   (1) the assessment was made for disability purposes; (2) Dr.

22    Liu  "does  not  describe  limitations  associated  with  any  other  body  part";

23    (3) "[i]n light of the minimal findings . . . , the opinion overstates

24    [plaintiff]'s  limitations";  and  (4)  his  opinion  is  contradicted  by  the

25    State agency review physicians.  (A.R. 21.)

26

27          The  ALJ's  first  reason  for  rejecting  Dr.  Liu's  opinion  -- *to wit*,

28    that  Dr.  Liu's  assessment  was  made  for  disability  purposes  --  is

17

unavailing.   The ALJ's assertion lacks foundation and is not a legally sufficient ground upon which to reject a treating doctor's report.   *See* Lester, 81 F.3d at 832 ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); *see also* Ratto v. Sec'y, 839 F. Supp. 1415, 1426 (D. Or. 1993)(an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits").   While the ALJ "'may introduce evidence of actual improprieties,'" no such evidence exists here.   Lester, 81 F.3d at 832 (citation omitted).   Thus, the fact that Dr. Liu's letter was prepared for "disability purposes" is of no moment, and Dr. Liu's opinion constitutes substantial evidence that plaintiff had significant pain, limitations, and restrictions resulting from impairments of her upper extremities.   Accordingly, the ALJ's rejection of Dr. Liu's letter on this basis is reversible error.

        The ALJ's second reason for rejecting Dr. Liu's opinion -- *to wit* that he "does not describe limitations associated with any other body part" -- is not legitimate.   While it is true that Dr. Liu solely provides findings with respect to plaintiff's upper extremities in his May 15, 2008 letter, it does mean that those findings alone would not render plaintiff disabled.   (A.R. 212.)   Moreover, plaintiff was referred to Dr. Liu specifically for evaluation of her upper extremities, particularly for her left and right shoulder pain.   (A.R. 176, 182-83.)   If the ALJ required further, more specific details regarding the extent of plaintiff's impairments related to her "other body part[s]," then the ALJ should have further developed the record.

        Third, the ALJ concluded that Dr. Liu's opinion is based on

"minimal findings . . . [and] overstates the [plaintiff's] limitations" concerning her upper extremities.  (A.R. 21.)  Contrary to the ALJ's finding, it is not evident that there were "minimal findings," as the medical record is replete with numerous notations -- describing plaintiff's symptoms, treatment, and objective clinical findings regarding her upper extremities -- that support his opinion.[9]  Also, Dr.

---

[9]   On August 15, and October 4, 2006, plaintiff was evaluated for her right shoulder pain.  (A.R. 182, 186.)  Dr. Liu assessed "calcific tendinitis right shoulder" and "impingement syndrome right shoulder." (*Id.*)  Plaintiff was given a steroid injection, and she indicated that she had approximately 80 percent relief for the following couple of days, but she was currently at 50 percent pain relief.  (*Id.*)

On April 10, 2007, Dr. Liu noted that "X-rays do show a calcific body in the area of the lateral acromial process. Remainder of the bony anatomy appears normal."  (A.R. 190.)  He diagnosed her with "right shoulder impingement syndrome with calcific tendinitis." (A.R. 190.)

On April 25, 2007, Dr. Liu noted that plaintiff had "successful left shoulder surgery for calcific tendinitis" and that plaintiff's "right shoulder is not bothering her as badly as the left shoulder but she is not functioning normally with it because she has on and off pain, waxes and wanes in the right shoulder."  (A.R. 193.)  Dr. Liu suggested that plaintiff consider surgery for her right shoulder as well.  (*Id.*)

An MRI of plaintiff's right shoulder on May 10, 2007, showed signs of a "small partial tear" and "small amount of fluid . . . in the subacromial/subdeltoid bursa."  (A.R. 199.)

On July 10, 2007, plaintiff underwent an operation on her right shoulder due to "right shoulder pain, history of calcific tendinitis with evidence of impingement" and to "rule out rotator cuff tear."  (A.R. 171.)

On August 16, 2007, Dr. Liu noted that plaintiff's right shoulder exhibited decreased range of motion, tenderness, and swelling. He assessed "calcific tendinitis shoulder" and "rotator cuff syndrome, s/ scope.  Stable, probably will gradually improve."  (A.R. 151.)

On October 26, 2007, Dr. Liu noted that plaintiff "got over tendinitis post op for right shoulder, still sore, but doing exercises for ROM, and functional rehab."  (A.R. 153.)  For her right shoulder, Dr. Liu noted that she exhibited decreased range of motion, tenderness, pain, and decreased strength.  (A.R. 154.)  He also noted tenderness in her right elbow.  He assessed "calcific tendinitis shoulder, right" and "lateral epicondyltis, right."  (*Id.*)

1  Liu did not complete a functional assessment for plaintiff, and thus, it

2  is unclear whether Dr. Liu's findings "overstate[] [plaintiff's]

3  limitations" as the ALJ contends. (A.R. 21.)  Therefore, this basis

4  does not constitute a legitimate reason for rejecting Dr. Liu's opinion.

5

6      Lastly, the ALJ's fourth basis for rejecting the opinions of Dr.

7  Liu -- *to wit,* that his opinion is contradicted by the State agency

8  physicians -- is also unavailing. (A.R. 21.)  The opinions of State

9  agency physicians, who are non-treating and non-examining physicians,

10  cannot, by themselves, constitute substantial evidence, because they are

11  not based on any independent findings.[10]  Indeed, it does not appear that

12  _____

13      On December 3, 2007, plaintiff presented with "right tennis
    elbow pain and wrist pain and forearm discomfort," as well as "some
14  numbness in right hand." (A.R. 171.)  Upon examination, Dr. Liu noted
    that plaintiff's right shoulder exhibited decreased range of motion,
15  minimal pain, decreased strength, and no tenderness. (A.R. 172.)  As
    for her right elbow, she had normal range of motion but lateral
16  epicondyle tenderness. (*Id.*)  He recommended a right elbow cortisone
    injection. (*Id.*)

17
        On January 15, 2008, plaintiff presented with pain of her
18  right arm. (A.R. 159.)  On physical exam, Dr. Liu noted that her right
    shoulder exhibited decreased range of motion, pain, and decreased
19  strength. (A.R. 160.)

20      On April 1, 2008, plaintiff presented with minimal right
    shoulder pain and remarked that the cause of her "arm pain which existed
21  preop, . . . has been highlighted postop." (A.R. 168.)  Plaintiff's
    right shoulder exhibited decreased range of motion and no pain. (A.R.
22  169.)  Her right upper arm exhibited tenderness but no swelling, edema,
    and deformity. (*Id.*)  Dr. Liu recommended an MRI of her right arm.
23  (*Id.*)

24      [10]  On April 22, 2008, State agency physician David A. Haaland
    opined as follows:
25
        [Plaintiff] has R shoulder impingement syndrome with
26      subacaromial bursitis and RC tendonopathy w/o tear.  Scoped
        7/07 and now recovered so ROM is full for SSA standards and
27      pain is controlled.  Flex and ABD is 140*.  She had a similar
        problem in L shoulder in 2004 that completely resolved with
28      shoulder arthroscopy and time for recovery.  The R shoulder is
        showing the same post op course.  She also has a R lateral

the State agency physicians based their opinions on any medical findings or tests that Dr. Liu did not consider himself.  Moreover, unlike the State agency reviewing physicians, Dr. Liu is an orthopedic surgeon.  The opinion of a specialist about medical issues related to his area of specialty generally receives more weight than the opinions of non-specialist sources.  20 C.F.R. § 404.1527(c)(5).

Accordingly, for the aforementioned reasons, the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of plaintiff's treating physician, Dr. Liu.  This constitutes error.  On remand, the ALJ needs to properly consider Dr. Liu's opinions and, to the degree necessary, conduct an appropriate inquiry regarding the extent of plaintiff's symptoms and limitations, which Dr. Liu opined to be disabling.  Specifically, the ALJ should try to obtain from Dr. Liu functional limitations to be imposed based on plaintiff's impairments, or the ALJ may need to secure a consultative examination for plaintiff.

---

epicondylitis that is resolving with conservative measures. The AOD is 3/06 for this R shoulder case.  [Plaintiff] is capable of light work with occasional use of the R shoulder for overhead activities.  She is credible for the shoulder problem but not for the degree of disability alleged.  There will be no 12 month period when this RFC would not be in effect.

(A.R. 209.)

Dr. Haaland then opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for about six hours with unlimited push and/or pull abilities; unlimited manipulative limitations except with occasional above shoulder reaching with her right upper extremity.  (A.R. 204-06.)

On June 9, 2008, State agency physician Dr. Thu N. Do, affirmed Dr. Haaland's RFC of plaintiff.  (A.R. 213-15.)

21

**IV.   Because The ALJ's Findings Regarding Plaintiff's Ultimate RFC Must Be Reconsidered, Additional Vocational Expert Testimony Likely Will Be Required.**

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand.   As a result, the ALJ's conclusion regarding plaintiff's RFC and plaintiff's ability to do her past relevant work may change.   Therefore, the Court does not reach plaintiff's fourth claim.   To properly review and reconsider these issues, the ALJ must correct the above-mentioned deficiencies and errors.   Further, to the extent that plaintiff's RFC is reassessed, additional testimony from a vocational expert likely will be required to determine what work, if any, plaintiff can perform.

**V.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.* at 1179-81.

1    Remand is the appropriate remedy to allow the ALJ the opportunity
2    to remedy the above-mentioned deficiencies and errors. *See, e.g.,*
3    Benecke, 379 F.3d at 593 (remand for further proceedings is appropriate
4    if enhancement of the record would be useful); *see also* Stillwater v.
5    Comm'r of Soc. Sec. Admin., 361 Fed. Appx. 809, 812 (9th Cir. Jan. 7,
6    2010)(remand for reconsideration of State agency physicians' opinions
7    that were discredited because they were based on a treating physician's
8    opinion that the ALJ rejected improperly); Dodrill v. Shalala, 12 F.3d
9    915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could
10   articulate specific and appropriate findings, if any existed, for
11   rejecting the claimant's subjective pain testimony); McAllister, 888
12   F.2d at 603 (remand appropriate to remedy defects in the record).
13   ///
14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

1

**CONCLUSION**

2

3          Accordingly, for the reasons stated above, IT IS ORDERED that the

4    decision of the Commissioner is REVERSED, and this case is REMANDED for

5    further proceedings consistent with this Memorandum Opinion and Order.

6

7          IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8    copies of this Memorandum Opinion and Order and the Judgment on counsel

9    for plaintiff and for defendant.

10

11         **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13   DATED:   March 26, 2013

14                                              *Margaret A. Nagle*

15

16                                        _____
                                                MARGARET A. NAGLE
                                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

24